1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    SHERMAN L. DAVIS,                      No. 08-01978 CW

9              Petitioner,                  ORDER DENYING
                                            PETITION FOR WRIT OF
10        v.                                HABEAS CORPUS;
                                            DENYING CERTIFICATE
11   DERRAL G. ADAMS,                       OF APPEALABILITY

12            Respondent.

13   _____/

14

15        Petitioner Sherman L. Davis, an inmate at Corcoran State

16   Prison, filed a pro se petition for a writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254, challenging the validity of his 2003

18   state conviction.  Respondent filed an answer, and Petitioner filed

19   a traverse.  Having considered all the papers filed by the parties,

20   the Court denies the petition and denies a certificate of

21   appealability.

22                              BACKGROUND

23        The following is a summary of the facts taken from the October

24   21, 2005 state appellate court's unpublished opinion on direct

25   appeal and the transcript of Petitioner's trial.  Resp's. Ex. B.

26   People v. Davis, 2005 Cal. App. Unpubl. LEXIS 9593 at *1-11.

27   I. California Bank and Trust Robbery

28        On October 16, 2001, Petitioner entered the Albany branch of

**United States District Court**
For the Northern District of California

the California Bank and Trust, went to a teller window and told teller Karen Nelson that he wanted to open a new account. Stephanie Sims, another bank employee, directed Petitioner to a desk.  After speaking with Sims for five or ten minutes, Petitioner left the bank.  Sims then saw Petitioner quickly walk back into the bank.  Petitioner pointed a gun at Nelson, demanded money and threatened to shoot her.  Nelson gave Petitioner nearly $4,000. After he pointed his gun at Nelson's head and said that wasn't enough, another employee gave him more money.  Petitioner received a total of $12,734.  He told the five bank employees to go into the safe deposit area, to lie down on the floor, and to wait three minutes or he would kill them.  He then left the area.

Sims, Nelson and another employee, Evelyn Herrera, identified Petitioner as the bank robber from a videotaped lineup.  Amelia Chellew, the bank manager, initially identified another person in the lineup, realized on her way home that Petitioner was the robber, and called the police to correct her identification.  These four witnesses testified at Petitioner's trial and identified him in court.

II. Body Time Robbery

On October 26, 2001, Petitioner entered the Body Time shop on College Avenue in Oakland and told an employee, Sophia Marzocchi, that he was looking for something for his fiancee.  Marzocchi spent about ten minutes with Petitioner discussing perfumes.  When Marzocchi left to ring up another customer, Petitioner said, "This is a robbery.  I have a gun.  Everybody move to the back."  At Petitioner's direction, the customers moved to an area behind a

curtain in the back of the shop, lay on their stomachs, and gave

him their cash.  Petitioner told Marzocchi to open the safe,

threatening to kill her if she did not do so.  Marzocchi opened the

safe.  Petitioner took the $310 that was inside it and put it in a

canvas Body Time bag.  He told Marzocchi to lie down with the

customers in the back of the store and told all of them not to

leave, or he would shoot them.

Marzocchi and witness Luz Mendoza identified Petitioner in a

video lineup, and at his preliminary hearing and trial.  Michelle

Romano, another witness, did not identify Petitioner in the lineup,

but identified him at the preliminary hearing and the trial.  Two

other witnesses did not identify Petitioner.

III. Ovation Robbery

On October 29, 2001, Petitioner entered the Ovation Clothing

Store on College Avenue in Oakland and told a sales clerk, Ingjred

Olsen, that he wanted a gift for his niece.  While Olsen was

showing Petitioner various items, he pulled out a gun, pointed it

at another employee, Lesley Pulaski, and told Pulaski to give him

the money out of the cash register.  At Petitioner's direction,

Pulaski put between $200 and $260 in an Ovation shopping bag and

handed the bag to him.  Petitioner then told everyone in the store

to get in the back.  One customer, Sophie Grossman-de Vries,

refused and, when she tried to leave the store, Petitioner hit her

in the neck.  Grossman-de Vries then obeyed Petitioner and went

into the back room.  Petitioner demanded money from the employees

and customers, and they gave him what they had.  Petitioner

directed them into the bathroom, closed the door from the outside,

3

1    and told them to do nothing for ten minutes or he would come back

2    and kill them.

3        Olsen, Pulaski, Grossman-de Vries and Melissa Oehler, another

4    customer in the shop, testified at Petitioner's trial.  Grossman-de

5    Vries and Olsen identified Petitioner at a video lineup, the

6    preliminary hearing and the trial.  Pulaski and Oehler did not

7    identify Petitioner in the lineup, but identified him at the

8    preliminary hearing and trial.

9    IV. Boogie Woogie Bagel Boy Robbery and Sexual Assault

10       On November 7, 2001, Jennifer W. was seated inside the Boogie

11   Woogie Bagel Boy shop, on Piedmont Avenue in Oakland, where her

12   boyfriend, Jeff Bjorlo, worked.  She noticed a gold Ford Probe pull

13   into a parking spot.  Petitioner got out of the car, came into the

14   shop and ordered a bagel.  Jennifer went outside and sat at one of

15   the patio tables.  Petitioner came outside, sat at the table next

16   to Jennifer's, and began talking to her.  She went back inside and

17   began helping Bjorlo prepare to close the shop for the day.

18   Petitioner came back inside to get a cup of coffee, went to his

19   car, returned to the store and went to the cash register with a

20   gun.  He said, "This isn't a joke," and told Jennifer and Bjorlo to

21   get in the back and motioned them into the office area.

22   Petitioner told Jennifer to lie down and went with Bjorlo to the

23   cash register.  Petitioner directed Bjorlo to empty the $100 to

24   $150 that was in the register into a brown bag on the desk.

25       Petitioner told Bjorlo to go into the bathroom.  Then, he told

26   Jennifer to get on her knees, threatened her with his gun, put his

27   penis in her mouth and told her to orally copulate him.  She did

28                                    4

United States District Court
For the Northern District of California

so.  Bjorlo called from the bathroom that the owner would be arriving any minute.  Petitioner pushed Jennifer's head away, told her to go into the bathroom and lie down, and left the store.

Jennifer noticed some scars on Petitioner's arm, and later she said that they matched those in a photograph of Petitioner.  She also identified a picture of Petitioner's car as the car she saw him driving on the day of the robbery.  Bjorlo identified Petitioner in a photo lineup and Jennifer tentatively identified Petitioner by putting a question mark on his photo.  They identified Petitioner at the preliminary hearing and the trial.

V. Arrest and Trial

On November 8, 2001, Officer Eric Huesman of the Oakland Police Department saw a car parked at the Sleepy Hollow Hotel in Oakland matching the description provided by Jennifer.  He testified that he would have described the car as silver, but that it could be seen as gold.  Huesman knocked on the door of Petitioner's unit.  Petitioner looked through the curtain, saw Huesman and looked nervous.  Petitioner closed the curtain and Huesman heard muffled noises coming from inside.  After Huesman knocked a second time, Petitioner opened the door.  Petitioner acknowledged that the Ford Probe was his.  Huesman noticed that Petitioner had "yellow teeth with a gap in them," which matched the description Jennifer had given of her attacker.  Huesman later walked around to the back of the hotel and, on the ground underneath the window of Petitioner's unit, he found a black semiautomatic pistol.

Based on this information, Huesman decided to arrest

Petitioner.   As Huesman and another officer walked back to the front of the hotel, Huesman saw Petitioner pulling out of the parking lot in the Probe.   Huesman asked Petitioner to pull over. Petitioner said he would, but instead drove away.   A car chase ensued.   After Petitioner's car struck a curb, he got out of the car and ran.   He was caught and taken into custody.

On June 4, 2003, a jury trial commenced.   The prosecutor's case consisted of testimony by the victims and witnesses of the four robberies and sexual assault.   The defense case consisted of the testimony of Martin Blinder, M.D., an expert in the field of eye witness identifications, who pointed out factors that would make eyewitness identifications less reliable.   The defense also presented testimony that no fingerprints or other physical evidence connected Petitioner to the robberies or sexual assault.

On August 7, 2003, the jury found Petitioner guilty of ten counts of second degree robbery, two counts of attempted robbery, and one count of forcible oral copulation.   The jury found that Petitioner had personally used a firearm in the commission of those crimes and that he was an ex-felon in possession of a firearm. After a bench trial, the court found beyond a reasonable doubt that Petitioner had seven prior convictions.   Petitioner was sentenced to an indeterminate term of 343 years to life, with a consecutive determinate term of 100 years.

PROCEDURAL HISTORY

Petitioner timely appealed his conviction to the California court of appeal.   On October 21, 2005, the state appellate court, in an unpublished opinion, affirmed the judgment of conviction.   On

United States District Court
For the Northern District of California

November 23, 2005, Petitioner filed a petition for review in the California Supreme Court, which was denied on February 1, 2006.

On April 16, 2008, Petitioner filed the instant federal petition asserting eleven claims for relief. Petitioner had exhausted only two of these claims in his direct appeal. This Court stayed the federal petition pending exhaustion of state remedies. On August 18, 2008, Petitioner filed a habeas petition in the state trial court. On October 20, 2008, the trial court denied the petition, finding that it was untimely. Resp.'s Ex. D. The court also stated, "Assuming that the petition was timely, or otherwise been exempt [sic] from the timeliness requirement, relief would be nonetheless denied on the merits for failure to state a prima facie case for relief." On November 6, 2008, Petitioner filed a habeas petition in the California court of appeal, which was denied summarily on November 20, 2008. Resp.'s Ex. E. On December 31, 2008, Petitioner filed a habeas petition in the California Supreme Court, which was denied summarily on July 8, 2009. Resp.'s Ex. F. On October 16, 2010, this Court lifted the stay and ordered Respondent to show cause why the writ should not be granted.

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant habeas relief unless the state court's adjudication of the claim:

7

United States District Court
For the Northern District of California

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411. The application must be "objectively unreasonable" to support granting the writ. <u>Id.</u> at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). A petitioner must present clear and convincing evidence to overcome the presumption of

8

United States District Court
For the Northern District of California

1   correctness under § 2254(e)(1); conclusory assertions will not do.

2   Id.  Ninth Circuit precedent remains relevant persuasive authority

3   in determining whether a state court decision is objectively

4   unreasonable.  Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.

5   2003).

6       If constitutional error is found, habeas relief is warranted

7   only if the error had a "'substantial and injurious effect or

8   influence in determining the jury's verdict.'"  Penry v. Johnson,

9   532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S.

10  619, 638 (1993)).

11      When there is no reasoned opinion from the highest state court

12  to consider a petitioner's claims, the court looks to the last

13  reasoned opinion of the highest court to analyze whether the state

14  judgment was erroneous under the standard of § 2254(d).  Ylst v.

15  Nunnemaker, 501 U.S. 797, 801-06 (1991).  However, the standard of

16  review under AEDPA is somewhat different where there is no reasoned

17  state court decision.  When confronted with such a decision, a

18  federal court should conduct "an independent review of the record"

19  to determine whether the state court's decision was an objectively

20  unreasonable application of clearly established federal law.

21  Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006).

22                              DISCUSSION

23      Petitioner asserts that his counsel was ineffective for

24  failing to: (1) call witnesses; (2) present evidence; (3) impeach

25  witnesses; (4) move to suppress evidence; (5) investigate juror

26  misconduct; and (6) conduct a pretrial investigation.  He also

27  asserts claims based on trial counsel's conflict of interest;

28                                   9

United States District Court
For the Northern District of California

prosecutorial misconduct; juror misconduct; trial court error in denying his <u>Faretta</u> motion; trial court error in excluding him from court hearings; and "cumulative effect of error."

The two claims of trial court error were addressed on the merits in the appellate court's unpublished opinion on direct appeal.  All other claims were denied summarily by the state courts on habeas review and must be reviewed independently by this Court.

I. Ineffective Assistance of Counsel

A. Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  To prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  <u>Id.</u> at 687-88.  The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable.  <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 689.  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

10

unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as the result of the alleged deficiencies. Id. at 697; Williams v. Calderon, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995).

B. Failure to Interview and Call Witnesses

The duty to investigate and prepare a defense does not require that every conceivable witness be interviewed. Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir. 1995). When the record shows that the lawyer was well-informed and the petitioner fails to state what additional information would be gained by the discovery he now claims was necessary, an ineffective assistance claim fails. Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986). A petitioner's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance. Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).

To establish prejudice caused by the failure to call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witness's testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner. Alcala v. Woodford, 334 F.3d 862, 872-73 (9th Cir. 2003).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1        1. Marie Mason

2        Petitioner argues that the testimony of Marie Mason, a

3   civilian "drive-along" who accompanied Officer Huesman on the night

4   he arrested Petitioner, would have impeached Officer Huesman.

5   Petitioner states that, when Officer Huesman was in Petitioner's

6   motel room, he found crack cocaine and a crack pipe in a fanny-pack

7   tied around Petitioner's waist.   However, at trial, Officer Huesman

8   testified that he found no drugs or contraband on Petitioner.

9   Petitioner reasons that, if the jury heard that Officer Huesman

10  lied about not finding the contraband, they would question the

11  credibility of his testimony about finding a gun outside

12  Petitioner's motel window and a white tank top in Petitioner's car

13  that was similar to the one worn by the robber.

14       Petitioner provides no evidence that Officer Huesman found

15  crack cocaine and a crack pipe in Petitioner's possession on the

16  night of his arrest.   And, even if Petitioner is correct, his

17  counsel cannot be faulted for failing to elicit testimony that he

18  possessed contraband drugs.   Contrary to Petitioner's theory that

19  this would help his defense, it likely would have been more

20  prejudicial than helpful to him.   Therefore, counsel was not

21  ineffective for failing to call Mason as a witness.

22       2. Prior Owner of Petitioner's Ford Probe

23       Petitioner argues the prior owner of his Ford Probe would have

24  testified that the car, which is silver, does not appear to be

25  gold.   This was important because prosecution witness Jennifer W.

26  testified that the suspect's car was gold.   When defense counsel

27  showed her pictures of Petitioner's car, she stated that it was not

28                                  12

the robber's car because the color was different.  However, Officer Huesman testified that Petitioner's car looked gold under certain lighting conditions.  During deliberations, the jury asked to see Petitioner's car but they could not because it had been lost from the police impound lot.  Petitioner contends that the car's former owner would refute Officer Huesman's testimony.

Petitioner's theory about the former owner's testimony is pure speculation.  This speculation is insufficient to demonstrate counsel's deficient performance or resulting prejudice.

### 3. Eva Sheehan

Petitioner states that Balvinder Kaur told the police that, before the robbery of the Body Time shop, she saw the robber in the bookstore next door talking to Eva Sheehan, who showed the robber some books.  Petitioner argues that Sheehan would corroborate Kaur's statement that "the only thing Petitioner had in common with the suspect is that they were both black males."  Petitioner's claim that Sheehan would so testify is mere speculation and insufficient to support a showing of counsel's deficient performance or resulting prejudice.

### 4. Crime Scene Photographer

Petitioner argues that the crime scene photographer could have testified to the true color of Petitioner's car and whether a white tank top was found in Petitioner's car.  Petitioner's claim that the photographer would so testify is pure conjecture and insufficient to state a claim of ineffective assistance of counsel.

Therefore, the state court's denial of the ineffective assistance of counsel claim based on the failure to call witnesses

United States District Court
For the Northern District of California

was not an objectively unreasonable application of clearly established federal law.

C. Failure to Investigate and to Present Evidence

Failure to present probative, non-cumulative, available evidence in support of a chosen defense strategy is deficient performance absent a reasonable tactical justification. Alcala, 334 F.3d at 870-71.

1. Jail Dental Records

Petitioner argues that defense counsel was ineffective for failing to present his jail dental records, showing that some of his teeth were removed following his arrest, to impeach identification witness Karen Nelson. However, defense counsel cross-examined Nelson at length, including about her description of Petitioner's teeth. RT at 178-190. Nelson was certain that her identification was based primarily on Petitioner's face, not his teeth. RT at 179:21-23; RT at 185:21-23. Presentation of Petitioner's dental records would not have impeached Nelson's testimony, and counsel's performance was not deficient for failing to do so.

2. Rock Cocaine

Petitioner argues that counsel was ineffective for failing to impeach Officer Huesman by presenting photographs of a crack cocaine pipe and rock cocaine found in Petitioner's motel room. As discussed previously, the fact that Petitioner was in possession of cocaine and drug paraphernalia would have been more prejudicial than helpful to his defense. Therefore, counsel's decision not to introduce the alleged photograph of contraband found in

United States District Court
For the Northern District of California

Petitioner's possession does not constitute ineffective assistance.

### 3. Records from Ford Motor Company

Petitioner argues that evidence from the Ford Motor Company showing that the 1992 Ford Probe was released to the public in limited colors would have established that his Probe was silver, not gold.  This evidence would not have strengthened Petitioner's case given that defense counsel effectively cross-examined witness Jennifer W. and elicited testimony from her that Petitioner's car, which was silver, could not have been the robber's car because she saw the robber drive a gold Probe.

Therefore, the state court's denial of the ineffective assistance of counsel claim based on failure to investigate or introduce evidence was not an objectively unreasonable application of clearly established federal law.

### D. Failure to Impeach Witnesses

Great deference is afforded to counsel's decisions at trial, including whether to cross-examine a particular witness.  <u>Brown v. Uttecht</u>, 530 F.3d 1031, 1036 (9th Cir. 2008).

### 1. Officer Huesman

Petitioner argues counsel should have impeached Officer Huesman with the photograph of contraband in his hotel room.  As discussed above, the impeachment of Officer Huesman with the photograph of contraband would have been prejudicial to Petitioner's defense.

### 2. Amelia Chellew

Amelia Chellew identified another individual in the police lineup, but later called the police station to say she had made a

15

mistake.   She then identified Petitioner as the bank robber.

Petitioner contends that Chellew's co-worker, Evelyn Herrera,

testified that, after the police line-up, she and Chellew left the

police station together, and Herrera had told Chellew that Chellew

had picked the wrong person.   Petitioner argues that counsel was

ineffective for failing to impeach Chellew with her statement that

she had not spoken to anyone after she made her first

identification.   However, defense counsel cross-examined Chellew

about the change in her identification and about the fact that she

may have been relying on information from other witnesses rather

than her own memory to make the second identification.   RT at 553-

557.   Therefore, counsel's performance was not deficient.

> 3. Lesley Pulaski

Petitioner criticizes how counsel impeached Pulaski regarding

a 911 call she made to report the Ovation robbery, after she

testified that she did not make such a call.   However,

disagreements regarding trial strategy, including the cross-

examinations of witnesses, are insufficient to support a claim of

ineffective assistance of counsel.   See United States v. Mayo, 646

F.2d 369, 375 (9th Cir. 1981) (difference of opinion as to trial

tactics does not constitute denial of effective assistance);

Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984) (tactical

decisions are not ineffective assistance simply because, in

retrospect, better tactics are known to have been available).

Therefore, the state court's denial of this claim was not an

objectively unreasonable application of clearly established federal

law.

**United States District Court**
For the Northern District of California

E. Failure to Object to Evidence and to Seek Instruction Regarding "Lesser Evidence"

1. White Tank Top

Petitioner contends that counsel was ineffective for failing to object to the introduction into evidence of a white tank top that connected him to the crimes at the Boogie Woogie Bagel Boy shop. He argues that the prosecutor introduced the tank top into evidence without laying a foundation regarding who found it and how it was connected to Petitioner. However, Oakland Police Officer Sam Francis testified that he searched Petitioner's Ford Probe after Petitioner was arrested and recovered a white tank top from it. RT at 2766:8-25. Officer Francis identified the white tank top that the prosecutor showed him in court as the one he recovered, based on the fact that it was the same size and color and was marked with an evidence tag in his handwriting. He stated that after he recovered the shirt he turned it in to the Oakland Police Department's property section. Because the prosecutor laid a proper foundation for introducing the tank top into evidence, defense counsel cannot be faulted for not objecting.

2. "Tainted" Photograph of Petitioner's Car

Petitioner argues that counsel should have objected to the admission into evidence of a "tainted" photograph of his car that was taken under "false lighting" to give the appearance of a gold tint. However, counsel did object to the introduction of this photograph. RT at 1806-07. The court overruled the objection, but also admitted into evidence defense counsel's photograph depicting the car as silver in color. Therefore, this claim of

17

ineffectiveness of counsel fails.

### 3. Photograph of Black Tote Bag

Petitioner argues that counsel should have objected to the introduction of a photograph of a black tote bag found in his car at the time of his arrest in lieu of the actual bag which had been lost with his car.  Petitioner claims the photograph was "lesser evidence."  This is not a valid objection to the admissibility of evidence.

Accordingly, the state court's denial of the claim of ineffective assistance of counsel based on failure to object to evidence was not an objectively unreasonable application of clearly established federal law.

### F. Failure to Prepare For Trial

#### 1. Line-up Cards for Uncharged Bank Robberies

Petitioner faults counsel for failing to obtain the line-up cards shown to witnesses of two bank robberies with which he was not charged.  Petitioner's photograph appeared in those lineups and was not identified by any of the witnesses.  He argues that this evidence would have proved that he was not involved in the California Bank and Trust robbery.

The record shows that mid-trial counsel moved for discovery of the police reports, photos and victim contact information concerning the two uncharged bank robberies.  RT at 2236-48. Counsel argued that, if it could be determined that the robber in one or both of those robberies was the same person who robbed the California Bank and Trust, it would cast doubt on the reliability of the identifications of Petitioner as the California Bank and

18

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

Trust robber.  RT at 2235.  The trial court conducted an in camera review of the evidence connected to the uncharged robberies and found that it was not likely to lead to exculpatory evidence in Petitioner's case.  RT at 2548-52.  Petitioner's contention that, had counsel conducted a pre-trial investigation of the two uncharged robberies, she would have been in a better position to obtain exculpatory evidence is pure speculation.  Because counsel moved for this information during trial, Petitioner cannot show that her performance was deficient.  Nor has he shown that a pre-trial investigation would have yielded evidence that would have changed the outcome of the jury's verdict.

   2. 911 Printout

   Petitioner faults counsel for failing to obtain the printout of Pulaski's 911 call in order to impeach her.  As discussed previously, counsel cross-examined Pulaski regarding her 911 call, although Petitioner disagreed with how she did it.  The record does not reflect that counsel's cross-examination of Pulaski was ineffective.

   3. Investigator's Report From Video Line-up

   Petitioner faults counsel for not obtaining the investigator's report from a video line-up viewed by Grossman-de Vries, which indicated that, after Grossman-de Vries identified Petitioner in the line-up, she asked the investigator if she had picked the right person.  Petitioner argues that, had counsel elicited this fact, it would have created reasonable doubt.  However, the record shows that counsel did cross-examine Grossman-de Vries about her question to the investigator.  RT at 1124.  Therefore, counsel's performance

1  was not deficient in this regard.

2          4. Loss of Petitioner's Car Before Trial

3      Petitioner faults counsel for failing to discover before trial

4  that his Ford Probe had been lost.  He argues that counsel could

5  have sought sanctions against the prosecutor for losing "the most

6  important evidence" concerning the robbery and sexual assault that

7  took place at the Boogie Woogie Bagel Boy shop.  However, the

8  record shows that, during the trial, counsel became aware of the

9  loss and used defense photographs of the Ford Probe to establish

10  that the car was silver.  RT at 1806-08; 1827-30.  Petitioner does

11  not demonstrate prejudice from counsel's alleged failure to learn

12  of the loss sooner or to move for sanctions against the prosecutor.

13          5. Severance of Sexual Assault Charge

14      Petitioner argues that counsel was ineffective for failing to

15  move to sever the sexual assault charge from the robbery charges.

16      A misjoinder of counts may prejudice a defendant sufficiently

17  to render his trial fundamentally unfair in violation of due

18  process.  Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997).

19  To prevail on such a claim, the petitioner must demonstrate such

20  prejudice, id., and that the misjoinder had a substantial and

21  injurious effect or influence in determining the jury's verdict.

22  Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000).  There is

23  a "high risk of undue prejudice whenever . . . joinder of counts

24  allows evidence of other crimes to be introduced in a trial of

25  charges with respect to which the evidence would otherwise be

26  inadmissible."  United States v. Lewis, 787 F.2d 1318, 1322 (9th

27  Cir. 1986).  But joinder generally does not result in prejudice if

28                              20

United States District Court
For the Northern District of California

the evidence of each crime is simple and distinct, and the jury is properly instructed so that it may compartmentalize the evidence. Bean v. Calderon, 163 F.3d 1073, 1085-86 (9th Cir. 1998).

At the hearing on jury instructions, defense counsel stated that, at the beginning of the trial, she should have moved to sever the sexual assault count. RT at 3250. To remedy this, counsel requested that the court give a limiting instruction. The court agreed to instruct the jury with the following modification of CALJIC No. 17.02:

> Each Count charges a distinct crime. You must decide each Count separately and each Count must be proved beyond a reasonable doubt. The defendant may be found guilty or not guilty of any or all of the crimes charged. The evidence introduced at trial may be relevant to more than one Count. In deciding whether the defendant is guilty or not guilty of any of the charged crimes you may consider all relevant evidence. However, a verdict as to any Count is not considered to be evidence and thus cannot be considered by you in your determination as to other Counts.
>
> Your finding as to each Count must be stated in a separate verdict.

CT at 701; RT at 3538.

The court also instructed the jury with CALJIC No. 2.91, as follows:

> The burden is on the People to prove beyond a reasonable doubt that the defendant is the person who committed the crimes with which he is charged.
>
> If, after considering the circumstances of the identification and any other evidence in this case, you have a reasonable doubt whether the defendant was the person who committed any crime charged by the Information, you must give the defendant the benefit of that doubt and find him not guilty of that crime.

CT at 686; RT at 3287.

Given these instructions and the fact that the sexual assault

21

charge was simple and distinct from the unrelated robbery charges, any prejudice that was created by the joinder of the charges was remedied.  Even if counsel's performance had been deficient, Petitioner cannot show prejudice great enough to render his trial fundamentally unfair or a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.

### 6. Closing Argument Lacked Focus

Petitioner contends that counsel was unprepared for closing and, as a result, her argument lacked focus and was confusing to the jurors.  However, the record shows that counsel was prepared and vigorously defended Petitioner in her closing argument.  RT at 3383-3518.  Petitioner fails to demonstrate deficient performance or prejudice from counsel's closing argument.

Therefore, the state court's denial of Petitioner's claims that counsel failed to prepare for trial was not an objectively unreasonable application of established federal law.

G. Conflict of Interest

Petitioner argues that counsel "labored under a conflict" because she was assigned this case by the public defender's office right before trial and did not seek a continuance to investigate and prepare for it.  However, as discussed above, none of Petitioner's individual claims of ineffective assistance have merit and the trial record demonstrates that counsel competently defended Petitioner.  Therefore, the state court's denial of this claim was not an objectively unreasonable application of established federal law.

United States District Court
For the Northern District of California

II.  Juror Misconduct and Ineffective Assistance Based on Counsel's
     Failure to Investigate Juror Misconduct

     Petitioner argues that prejudicial juror misconduct occurred
when several jurors conducted their own investigation.

     A. Background

     The following facts are taken from the appellate court's
opinion addressing Petitioner's claim that the trial court erred in
denying his post-verdict motion for access to confidential juror
information.[1]

     After the jury returned its verdict, defense counsel moved the
trial court for confidential juror information in order to question
the jurors because, during her discussions with jurors immediately
after the verdict, several told her that, during deliberations,
they looked for Ford Probes and silver cars "to see if they turned
gold."  The court denied the motion without prejudice, stating that
the defense had the duty to try on its own to contact the jurors,
and that there had not been an adequate showing of misconduct.

     One month later, defense counsel renewed the motion, stating
that the public defender's office had been able to contact only six
of the twelve jurors.  At a hearing on the renewed motion, defense
investigator Paul Perez testified that he had spoken to several
jurors.  One juror told Perez that he was familiar with paints from
his work experience as a painter, and he knew that paints change
color under certain lighting conditions.  He said that he was not

_____

[1]The claim of juror misconduct was not before the appellate
court on direct appeal.  However, the claim based on access to
confidential juror information is based upon the same facts as the
claim of juror misconduct.

23

United States District Court
For the Northern District of California

aware of any outside information being brought into the deliberations.   Another juror told Perez that she knew from her own observations that car colors change under certain lighting conditions, but that "this knowledge was not brought into the case."   She said that there "may have been discussion between jurors regarding past experiences, observing car colors," but no jurors actively went out and made observations that they discussed in the jury room.

The court gave defense counsel the first names of the remaining six jurors so that counsel could contact them. Subsequently, the defense filed a motion for a new trial, attaching a declaration from Perez.   The appellate court summarized the relevant portion of Perez' declaration as follows:

> Juror No. 4 told Perez that during deliberations, the foreperson told the group that he had seen a parked car that was either gold or silver in color and had spent some time looking at it, and that after doing so, the foreperson was convinced that the colors gold and silver looked similar under certain conditions.   According to Juror No. 4, another juror told the group that when he was visiting a paint store on personal business, he asked someone in the store if the colors gold and silver could be mistaken for each other.   Juror No. 4 did not recall the answer, but the other juror shared it with the group and it was "not favorable to [defendant]."

People v. Davis, 2005 Cal. App. Unpub. LEXIS 9593 at *36-37.

Juror No. 4 also stated that, during deliberations, another juror said that she knew someone who worked at a clinic that dealt with sexual assaults and that she had some knowledge in this area. But, Juror No. 4 could not recall what details the other juror shared with the group.

The trial court denied the motion for new trial.

24

B. Legal Standard

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI; Irvin v. Dowd, 366 U.S. 717, 722 (1961). Evidence not presented at trial is defined as "extrinsic." Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir. 1987). Jury exposure to extrinsic evidence deprives a defendant of the rights to confrontation, cross-examination and assistance of counsel embodied in the Sixth Amendment. Lawson v. Borg, 60 F.3d 608, 612 (9th Cir. 1995). Although jurors may bring their life experiences to a case, it is improper for them to decide a case based on personal knowledge of facts specific to the litigation. Mancuso v. Olivarez, 292 F.3d 939, 950 (9th Cir. 2002). A petitioner is entitled to habeas relief only if it can be established that the exposure to extrinsic evidence had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Sassounian v. Roe, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting Brecht, 507 U.S. at 623).

C. Analysis

Even if some of the jurors' observations and discussions regarding paints changing colors improperly brought extrinsic evidence into the jury deliberation process, it did not add anything to the evidence already presented to the jury, that the silver color of the Ford Probe could appear to be gold under certain lighting conditions. Therefore, Petitioner cannot establish that these observations were prejudicial. The statement by the juror who knew someone who worked at a sexual assault clinic was general information based upon life experience. Therefore,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Petitioner does not demonstrate that any extrinsic evidence had a substantial and injurious effect or influence in determining the jury's verdict.

Furthermore, although Petitioner claims his counsel failed to investigate juror misconduct, the record proves otherwise.  Counsel moved twice for the release of confidential juror information so that her investigator could question the jurors regarding any extrinsic information that was discussed during deliberations. After counsel discovered that several jurors had discussed arguably extrinsic information, she moved for a new trial based on juror misconduct.  That the court denied the motion does not detract from the fact that counsel diligently investigated and litigated this issue on Petitioner's behalf.

Therefore, the state court's denial of the claims of juror misconduct and ineffective assistance based on failure to investigate it was not an objectively unreasonable application of established federal law.

III. Prosecutorial Misconduct

Prosecutorial misconduct is cognizable in federal habeas corpus.  Darden v. Wainwright, 477 U.S. 168, 179 (1986).  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  Id.  Under Darden, the first issue is whether the prosecutor's conduct was improper; if so, the next question is whether such conduct infected the trial with unfairness.  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).  "It is not enough that the prosecutors' remarks were undesirable or even universally condemned, the relevant

question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 179-80 (holding that prosecutor calling defendant "a vicious animal" deserved condemnation, but did not render the trial unfair).

Factors which a court may take into account in determining whether misconduct constitutes a due process violation are (1) the weight of evidence of guilt; (2) whether the misconduct was isolated or part of an ongoing pattern, Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct related to a critical part of the case, Giglio v. United States, 405 U.S. 150, 154 (1972); and (4) whether a prosecutor's comment misstated or manipulated the evidence, Darden, 477 U.S. at 182. If constitutional error occurred, habeas relief is not available unless the error had a substantial and injurious effect or influence on the jury's verdict. Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995) (citing Brecht, 507 U.S. at 638).

A. Describing Petitioner as a "Terrorist"

Petitioner argues that, during closing argument, the prosecutor twice referred to him as a "terrorist" and that her use of this word inflamed the jury's fear and anger.

In the prosecutor's closing argument, she described the manner in which the robberies took place, stating, "First the manner of his entry. Every single time he goes in, he requests a product or a service in a friendly way, and then he turns terrorist." RT at 3374. She also stated, "You know, this defendant is not choosing to rob machines and money. He's not, you know, choosing to get in

United States District Court
For the Northern District of California

and out.  He literally gets in and he goes out of his way to
terrorize these people by putting them in a room, holding them
captive, essentially."  RT at 3377.

The fact that the prosecutor chose inflammatory words to
describe the robber's behavior is insufficient, under <u>Darden</u>, to
rise to the level of a constitutional violation.  Furthermore,
Petitioner fails to demonstrate that the prosecutor used these
words as part of an ongoing pattern to inflame the jury or
misstated or manipulated the evidence.  The use of these words did
not render Petitioner's trial fundamentally unfair.

B. Perjury

Petitioner argues that the prosecutor forced witness Marzocchi
to commit "perjury" in testifying that she recognized the robber's
jacket, because the prosecutor showed the jacket to Marzocchi in
the courthouse prior to her testimony.  RT at 598.  However, on
cross-examination, defense counsel established that the prosecutor
had shown the jacket to Marzocchi before she testified and
Marzocchi admitted that she couldn't say that it definitely was the
jacket that the robber wore.  RT at 645-46.  The cross-examination
remedied any improper testimony the prosecutor caused in
Marzocchi's identification of the jacket.  Therefore, Petitioner
fails to establish that Marzocchi committed perjury or that her
identification of the jacket was contaminated by the act of the
prosecutor.

C. Loss of Ford Probe

Petitioner argues that the prosecutor committed misconduct by
losing or destroying his Ford Probe to keep the defense from

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

establishing that its true color was silver.  However, as discussed previously, defense counsel introduced two photographs of Petitioner's Probe to establish that it was silver-colored. Therefore, Petitioner does not establish a due process violation from the loss of his car.

### D. Interference with Defense Investigation

Petitioner argues that the prosecutor interfered with the defense investigation of juror misconduct by sending a letter to the jurors.

After the judge ruled that the defense could contact the jurors to investigate alleged juror misconduct, the prosecutor sent a letter to the jurors.  She informed them that they had the right not to discuss their deliberations or verdict with anyone and requested an opportunity to be present if any juror chose to discuss the case with the defense.  CT at 830.

Petitioner argues that the prosecutor's letter told the jurors not to speak to defense counsel until they contacted the district attorney.  This mischaracterizes the letter.  The letter did not impede the defense investigation of juror misconduct.  In fact, after speaking to several jurors, the defense obtained enough information to move for a new trial based on juror misconduct.

Therefore, the state court's denial of the prosecutorial misconduct claims was not an objectively unreasonable application of established federal law.

### IV. Denial of Faretta Motion

#### A. State Court Opinion

The following are the relevant facts taken from the appellate

court's opinion on direct appeal.

> On June 2, 2003, the date his case was supposed to go to trial, defendant appeared in court, represented by public defender Judith Browne.  The court asked the parties if they were ready to proceed.  Browne replied that she was ready to try the case, but that defendant wanted to address the court.  Defendant stated that since he had not been able to reach a satisfactory plea agreement, he wanted to represent himself.  According to defendant, he had wanted to represent himself two and a half months previously, but his case had been set for trial without his presence in court.  He expressed concern that his current attorney had only been assigned to his case for a short time, and questioned whether she was ready to proceed to trial.  According to defendant, he wanted to call 17 witnesses in his defense.  Defendant indicated he would need at least 90 days to prepare for trial.  The trial court denied the motion as untimely, noting that the case had been pending for a year and a courtroom was available.

> . . . The judge assigned to try the case noted that the court minutes indicated that at the appearance at which defendant's trial date was set, defendant was represented by his former counsel, Ms. Fasulis, but that defendant had not been brought into the courtroom. . . . [Subsequently, the case was assigned to Browne].  Browne told the court she had spent several hours with Davis on April 15 and that they had discussed the case, but that defendant did not tell her he wanted to represent himself. [S]he first heard of defendant's desire to represent himself on the day of trial, when she told him of the offer of a 50-year sentence.

> . . . [Davis] said that if he had been inside the courtroom at the last hearing and had known the matter would be bound over for trial, he would have exercised his right to represent himself.  However, he did not tell his attorney of his desire to represent himself, and did not contact her before the scheduled trial date.

People v. Davis, 2005 Cal. App. Unpubl. LEXIS 9593 at *10-13.

The court ruled as follows:

> Defendant made his motion on the day his case was set for trial.  We agree with the trial court that the motion was not made within a reasonable time before trial, and therefore the trial court had discretion to deny it. . . . We also conclude that the trial court did not abuse its discretion.  Defendant made the Faretta motion on the day of trial, in response to his dissatisfaction with the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

plea agreement he had been offered. The trial date had been set two and a half months earlier, and defendant had been aware of the date for more than two months. During that time, defendant informed neither his counsel nor the court that he wished to represent himself. Both the prosecutor and defense counsel were prepared to proceed on the date set for trial. Defendant estimated that he would need at least 90 days to prepare for trial. While it is true that defendant had shown no other proclivity to delay trial, we conclude that in the circumstances, the court was within its discretion to deny the motion as untimely.

People v. Davis, 2005 Cal. App. Unpubl. LEXIS 9593 at *15-16.

B. Federal Authority

A criminal defendant has a Sixth Amendment right to self-representation. Faretta v. California, 422 U.S. 806, 832 (1975). But a defendant's decision to waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not for purposes of securing delay. Id. at 835. With respect to timeliness, Faretta clearly established that, if all the requirements for a Faretta motion are met, a court must grant a Faretta request when it is made "weeks before trial." Marshall v. Taylor, 395 F.3d 1058, 1061 (9th Cir. 2005). However, Faretta did not establish when such a request would be untimely. Id.

C. Analysis

Citing People v. Windham, 19 Cal. 3d 121, 128 n.5 (1977), Petitioner argues that he was justified in making his Faretta motion on the day his case was set for trial. He reasons that, because he had not been brought into the courtroom for the three previous hearings, he did not know when his case was set for trial and, thus, he had no other opportunity to make a Faretta motion but on the day of the trial.

31

**United States District Court**
For the Northern District of California

Petitioner's citation to state authority is not relevant on federal habeas review.  The only established Supreme Court authority on this issue indicates that a <u>Faretta</u> motion is timely if it is made weeks before trial.  Petitioner's motion was made the day of his trial, not weeks before.  Therefore, the state appellate court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority.

V. Petitioner's Absence From Hearings

A. State Court Opinion

The state appellate court recognized that a criminal defendant has a constitutional right to be present at any stage of the proceeding that is critical to the outcome of his case, but noted that it is the defendant's burden to show that his absence prejudiced him or denied him a fair trial.  The court ruled,

> Defendant has failed to meet that burden here. . . .  He asserts [] that if he had been present at the [trial setting] hearing, he would have realized that there was a likelihood that his case would be tried on the scheduled June 2, 2003, trial date, and that he would have asserted his right to self-representation.  In our view, defendant's assertions are speculative, and do not support his claim.  The record indicates that defendant's trial counsel advised him shortly after the March 18, 2003, hearing that the matter had been set for trial.  It also indicates that she met with him approximately three weeks later and spent several hours discussing the case with him, but that defendant did not tell her he wished to represent himself until the day of trial.  Finally, it appears that defendant made no attempt to communicate to either the trial court or his counsel his desire to represent himself in the intervening period of more than a month and a half.  These facts do not suggest that defendant would have asserted his right to self-representation if he had been personally present at the March 18, 2003, hearing.  In the circumstances, we cannot conclude that defendant's presence at the hearing bore a substantial relation to his ability to defend himself.
>
> For the same reasons, we also reject defendant's claim

32

United States District Court
For the Northern District of California

that he was deprived of his constitutional right to equal
protection because, as an in-custody defendant who had
not been released on bail, he was unable to make the
decision to attend the hearing.

<u>People v. Davis</u>, 2005 Cal. App. Unpubl. LEXIS 9593 at *18-19.

B. Federal Authority

Due process protects a defendant's right to be present "at any
stage of the criminal proceeding that is critical to its outcome if
his presence would contribute to the fairness of the procedure."
<u>Kentucky v. Stincer</u>, 482 U.S. 730, 745 (1987).

C. Analysis

Petitioner argues that the appellate court erred by concluding
that he did not establish that he would have asserted his <u>Faretta</u>
rights had he been present at the March 18, 2003 hearing and
faulting him for not telling his newly appointed attorney or the
court about his desire to represent himself.  He argues that he did
not expect that a special court date would have been set to hear a
<u>Faretta</u> motion because he was not allowed in court for other
hearings on his case.  He points to the fact that he made a motion
for new counsel on the day of his preliminary hearing as proof that
he was dissatisfied with his defense counsel a year before his
trial date.

The appellate court carefully considered the facts relating to
Petitioner's request for self-representation.  It determined that
his presence at the trial-setting hearing would not have caused him
to make his <u>Faretta</u> motion earlier.  This finding is not
objectively unreasonable.  Furthermore, the fact that Petitioner
had earlier moved under <u>People v. Marsden</u>, 2 Cal. 3d 118 (1970), to

33

**United States District Court**
For the Northern District of California

1   substitute another attorney for Ms. Fusuli, his former attorney, is

2   not relevant to his later alleged desire to represent himself

3   rather than be represented by Ms. Browne.

4       Therefore, Petitioner has failed to establish that the state

5   court's denial of this claim was contrary to or an unreasonable

6   application of established Supreme Court authority.

7   VI. Cumulative Error

8       Although no single trial error is sufficiently prejudicial to

9   warrant reversal, the cumulative effect of several errors may still

10  prejudice a petitioner so much that his conviction must be

11  overturned.  <u>Alcala</u>, 334 F.3d at 893-95.  However, where there is

12  no single constitutional error, nothing can accumulate to the level

13  of a constitutional violation.  <u>Mancuso v. Olivarez</u>, 292 F.3d 939,

14  957 (9th Cir. 2002).

15      As discussed above, Petitioner has not established the

16  existence of a single constitutional error.  Therefore, the state

17  court's denial of this claim was not an objectively unreasonable

18  application of established federal law.

19                             CONCLUSION

20      For the foregoing reasons, the petition for a writ of habeas

21  corpus is DENIED.  The Court must rule on a certificate of

22  appealability.  <u>See</u> Rule 11(a) of the Rules Governing § 2254 Cases,

23  28 U.S.C. foll. § 2254 (requiring district court to rule on

24  certificate of appealability in same order that denies petition).

25  A certificate of appealability should be granted "only if the

26  applicant has made a substantial showing of the denial of a

27  constitutional right."  28 U.S.C. § 2253(c)(2).  The Court finds

28                                  34

that Petitioner has not made a sufficient showing of the denial of a constitutional right to justify a certificate of appealability. The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

IT IS SO ORDERED.

Dated: 11/16/2011

_____
CLAUDIA WILKEN
United States District Judge

1

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

2

3

SHERMAN L DAVIS,

4
                Plaintiff,

Case Number: CV08-01978 CW

5

v.

**CERTIFICATE OF SERVICE**

6

DERRAL G ADAMS et al,

7

                Defendant.

8
_____/

9

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court,
Northern District of California.

10

11

That on November 16, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located
in the Clerk's office.

12

13

14

15

Sherman Level Davis
CSP-Kern Valley (FBB1-209)
Prisoner Id D-40369
P.O. Box 5102
3000 West Cecil Ave.
Delano,  CA 93216-6000

16

17

18

Dated: November 16, 2011

19

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

36